IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEROME GARRETT, | ) | CASE NO. 1:05 CV 2185 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BRADSHAW, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## I.  Introduction

Before me by referral[1] is the *pro se* petition of Jerome Garrett for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  Garrett is currently incarcerated at the Southern Ohio Correctional Facility in Lucasville, Ohio,[3] where he is serving a sentence of 31 years to life.[4]

In his petition, Garrett raises two grounds for habeas relief arising out of his 2003 conviction in a Richland County, Ohio jury trial for conveying drugs into a detention facility.[5]  Here, Garrett claims that:  (1) over his objections, the trial court improperly required him to appear in front of the jury wearing his orange prison jumpsuit, leg irons, belly chains and handcuffs;[6] and (2) that his appellate counsel was ineffective in not arguing

---

[1] ECF # 5.

[2] ECF # 1.

[3] ECF # 15.

[4] *See*, ECF # 9 at 2.

[5] ECF # 1 at 2, 5-6.

[6] *Id.* at 5.

that the trial court erred in allowing Garrett to represent himself without insuring that Garrett had knowingly, intelligently and voluntarily waived his right to counsel.[7]  A previous third ground for relief was dropped by Garrett.[8]

The State, in response, maintains that the state appellate court decision rejecting Garrett's first ground for relief is not an unreasonable application of clearly established federal law.[9]  The State further argues that ground two is procedurally defaulted for not having been asserted to the Ohio Supreme Court.[10]

Garrett filed a traverse[11] in which he contends that the state court decision as to ground one is an unreasonable application of clearly established federal law since "there was no essential state interest in forcing Petitioner to wear prison attire before the jury ... except that it was convenient...."[12]  He also contends that any procedural default in ground two should be excused as (1) having been caused by the state court's failure to serve him with a timely copy of its ruling that (2) prejudiced him.[13]

---

[7] *Id.*

[8] ECF # 12 (Motion to withdraw claim in ground three); granted by non-document order of March 8, 2006.

[9] ECF # 9 at 17-19.

[10] *Id.* at 13.

[11] ECF # 14.

[12] *Id.* at 19.

[13] *Id.* at 20-33.

For the reasons that follow, I recommend finding that Garrett's petition should be dismissed in part and denied in part.

## II.  Facts

### A.    Offense, trial and direct appeals

The facts of the underlying offense and trial were found by the state appellate court[14] to be as follows:

> On March 7, 2002, Sarah Russell attempted to visit [defendant] Jerome Garrett, who was an inmate at the Mansfield Correctional Institution at that time.  She was stopped on her way into the facility and was found to be attempting to smuggle marijuana into the institution by way of balloons which she concealed in her vagina.  (T. At 78-79).  Ms. Russell stated that she was bringing the drugs to the institution at the request of [Garrett] and that he made all the arrangements for the visit. (T. At 76-87).

> [Garrett] was charged with one count [of] conveying drugs into a prison facility, in violation of R.C. § 2921.36(A)(2), a third degree felony.

> On April 17 and 18, 2003, this matter was tried before a jury. [Garrett] chose to represent himself at trial.

> At trial, Sarah Russell testified that she brought marijuana into the Mansfield Correctional Institution at the request of [Garrett]. (T. At 76-87). She also testified that [Garrett] wrote letters to her asking her to bring drugs into the facility.  (T. At 83, 109-118).

> The jury returned a verdict of guilty as charged.

---

[14] Factual findings made by the state appellate court on its review of the trial record are presumed correct.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

The trial court sentenced [Garrett] to four years[15] in prison.[16]

Garrett timely appealed his conviction and sentence. Now represented by appointed counsel, he submitted the following three assignments of error:

1.      The trial court erred by admitting hearsay evidence which was prejudicial to [Garrett].

   A.      The crime lab report (State's Exhibit "5") was inadmissible hearsay.

   B.      The partial letter (State's Exhibit "1") was irrelevant to this case as it was not signed and did not appear to have been written by [Garrett].

2.      The trial court committed error prejudicial to [Garrett] by requiring him to appear at trial, despite his objection, shackled and wearing prison attire.

3.      The trial court erred by not granting [Garrett's] motion for acquittal.

   A.      The state introduced insufficient evidence of a <u>drug of abuse</u> being conveyed into a detention facility.

   B.      [Garrett] was never identified as the individual who committed a crime.[17]

---

[15] Garrett was serving a sentence of 27 years to life when he was convicted of this crime, resulting in a current sentence of 31 years to life.  *See*, ECF # 9 at 2.

[16] *State v. Garrett*, No. 03-CA-49, 2004 WL 943862, at *1 (Ohio App. 5th Dist. April 30, 2004).

[17] ECF # 9, Ex. 3 (State's Ex. 6).  Because the record is not consecutively paginated, this Report must use the exhibit numbers affixed by the State, which then do not conform to the exhibit numbers assigned by the Court's electronic case filing system based on file size. References are first to the ECF exhibit, which may contain more than one of State's exhibits, followed by the particular State exhibit.

The State filed a brief in response.[18]  The appeals court then overruled each of Garrett's assignments of error and affirmed the judgment of the trial court.[19]

*Pro se*, Garrett then filed a timely notice of appeal with the Supreme Court of Ohio.[20] In that appeal, Garrett advanced two propositions of law:

1.     Appellant's Fourteenth Amendment right was violated when [he was] compelled to stand trial before a jury in identifiable prison jump-suit and visible restraints.

2.     The court of appeals rejection of Appellant's presentation that the trial court erred by admitting hearsay evidence which was prejudicial to Appellant was error.[21]

The State filed a response,[22] and the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[23]

**B.     Rule 26(B) application to re-open the appeal and subsequent motions**

While the notice of appeal was still pending with the Ohio Supreme Court, Garrett filed a timely *pro se* motion to re-open his appeal with the court of appeals.[24] In his Rule 26(B) application, Garrett presented one argument for re-opening his appeal:

---

[18] *Id.* (State's Ex. 7).

[19] *Id.*, Ex. 4 (State's Ex. 8); *see also*, *Garrett*, 2004 WL 943862 (Ohio App. 5th Dist. 2004).

[20] *Id.* (State's Ex. 9).

[21] *Id.* (State's Ex. 10).

[22] *Id.* (State's Ex. 11).

[23] *Id.* (State's Ex. 12).

[24] *Id.* (State's Ex. 13).

Appellant was denied effective assistance of appellate counsel on direct appeal as of right when appellate counsel failed to raise as an assignment of error the fact that the trial court deprived [Garrett] of his Constitutional right to the assistance of counsel at trial, as guaranteed him by the Sixth Amendment to the United States Constitution.[25]

In this application to re-open, Garrett essentially contended that, despite his stated desire to represent himself, the trial court should have conducted a *Faretta*[26] inquiry into whether Garrett "knowingly and intelligently" waived his right to be represented by counsel.[27]  Because, according to Garrett, the trial court made no inquiry into his decision to represent himself and his appellate counsel did not raise this failure on appeal, the appeal should be re-opened to permit this issue to be "briefed and decided on the merits."[28]

One day before the State filed a response to this application,[29] the state appeals court in a full written opinion denied Garrett's motion on August 12, 2004.[30]  The appellate court, citing to the standards for ineffective assistance enunciated in *Strickland*,[31] but not to the test for an intelligent and knowing waiver of the right to counsel propounded in *Faretta*, concluded first that Garrett's appellate counsel was under no obligation to raise "every

---

[25] *Id*. at 2.

[26] *Faretta v. California*, 422 U.S. 806 (1975).

[27] ECF # 9, Ex. 4 (State's Ex. 13) at 3, quoting *Faretta,* 422 U.S. at 835.

[28] *Id*. at 5.

[29] ECF # 9, Ex. 5 (State's Ex. 15).

[30] ECF # 9, Ex. 4 (State's Ex. 14).

[31] *Strickland v. Washington*, 466 U.S. 668 (1984).

possible issue [on appeal] in order to render constitutionally effective counsel."[32]  It then found that, because Garrett chose to represent himself, he "cannot now argue that he should not have been allowed to do so or that by allowing him to do so, he was deprived of the effective assistance of counsel."[33]

Although Garrett filed a motion to dismiss the State's motion opposing his Rule 26(B) application as untimely in September, 2004,[34] he did not timely appeal the actual denial of that motion by the court of appeals.  Instead, Garret took no action until May 23, 2005, when he moved to have the court re-issue its April, 2004 judgment so that he could timely appeal it.[35] In that motion, Garrett argued that he never received a copy of the appellate court's April, 2004 order denying his Rule 26(B) application until May 13, 2005, when, according to Garrett, he was first notified of the earlier decision by the Richland County Clerk of Courts[36] in response to his request for an update on his case.[37]

The State promptly moved to dismiss Garrett's motion to have the original denial vacated and the order re-issued for purposes of filing a timely appeal.[38] The State maintained that Garrett had offered no evidence to support his claim that he did not receive the court's

---

[32] ECF # 9, Ex. 4 (State's Ex. 14) at 3.

[33] *Id.*

[34] *Id.* (State's Ex. 16).

[35] *Id.* (State's Ex. 17).

[36] *Id*. at 2.

[37] *See*, *id.* (State's Ex. 19) at 1.

[38] *Id.* (State's Ex. 18).

order of April, 2004 until May, 2005, and further argued that re-issuing the order would be a "waste of judicial resources" and an "attempt to circumvent the rule [for timely appeals] of the Ohio Supreme Court."[39]

Garrett responded by moving to subpoena the mail records of the Lebanon Correctional Institution and to have the court conduct an evidentiary hearing on his claim that he did not receive notice of the original order denying the Rule 26(B) application until he requested an update on that motion in May, 2005.[40] The state appeals court denied both elements of Garrett's motion to subpoena records and hold a hearing,[41] and granted the State's motion to dismiss the motion to re-issue the judgment.[42]

Garrett thereupon timely appealed from both of these decisions.[43] In his memorandum in support of jurisdiction, Garrett raised a single proposition of law:

> Appellant's [rights under the] Fourteenth Amendment to the United States Constitution, and Article I, Section 16 [of the Ohio Constitution] was [sic] violated when the Fifth Appellate District Court of Appeals denied [A]ppellant's motion for a new judgment entry date which prevents [A]ppellant from appealing an appealable order with [sic] no fault of [A]ppellant's own.[44]

---

[39] *Id.* at 2.

[40] *Id.* (State's Ex. 19).

[41] *Id.* (State's Ex. 20).

[42] *Id*. (State's Ex. 21).

[43] *Id*. (State's Ex. 22).

[44] *Id.* (State's Ex. 23) at 3.

The State filed a motion in opposition.[45]  In it, the State reiterated its argument that re-issuing the appellate order would have the effect of circumventing the rules for timely appeals to the Ohio Supreme Court.[46]  It further argued that it was not the function of an appeals court to subpoena records or hold evidentiary hearings.[47]  The Supreme Court denied Garrett leave to appeal and dismissed the appeal as not involving a substantial constitutional question.[48]

## C.     Federal habeas petition

Prior to the Ohio Supreme Court's decision on Garrett's appeal from the denial of his Rule 26(B) application, Garrett filed the current petition for federal habeas relief on September 15, 2005.  In that petition, Garrett sets forth the following two grounds[49] for relief:

> **Ground One**:  Conviction obtained in violation of Due Process of Law guaranteed by the Fourteenth Amendment to the U.S. Constitution.
> **Supporting Facts**:  Over objections the trial court forced me to stand trial in front of a jury in orange prison jump-suit, leg irons, belly chains, and handcuffs, and deferred to correction official the option to use or not use visible restraints.

---

[45] *Id*. (State's Ex. 24).

[46] *Id*. at 3-4.

[47] *Id.* at 3.

[48] *Id.* (State's Ex. 25).

[49] As previously noted, Garrett was permitted to amend his petition to delete a third ground for relief.  *See*, ECF # 12 (motion to withdraw claim); granted by non-document order of March 8, 2006.

**Ground Two**: Conviction affirmed in violation of the Sixth Amendment guaranteed [sic] by the U.S. Constitution.
**Supporting Facts**:  Appellate counsel was ineffective for failing to argue as an assignment of error the fact that the trial court allowed defendant to represent his self [sic] without insurring [sic] that defendant was knowingly, voluntarily and intelligently waiving his right to counsel.[50]

As noted, the State responded with a return of writ,[51] arguing that: (1) ground one is without merit since the decision of the state appeals court denying that claim was a reasonable application of clearly established federal law,[52] and (2) ground two has been procedurally defaulted for not having been timely raised before the Ohio Supreme Court.[53]

Garrett, in turn, filed a traverse,[54] contending that:  (1) the state appellate court's denial of the claim presented in ground one was an unreasonable application of clearly established federal law;[55] and (2) any procedural default attributable to ground two should be excused since the failure to appeal the denial of the Rule 26(B) application was due to the county clerk of courts not transmitting a copy of that order in time to file such an appeal and failure to now consider the claim would prejudice Garrett.[56]

---

[50] ECF # 1 at 5.

[51] ECF # 9.

[52] *Id.* at 17-19.

[53] *Id*. at 13.

[54] ECF # 14.

[55] *Id.* at 2-20.

[56] *Id*. at 20-33.

-10-

### III.   Analysis

**A.**   **The state appellate decision denying the claim in Ground One was not an unreasonable application of, nor contrary to, clearly established federal law.**

*1.*   ***Standard of review***

The controlling federal statute, 28 U.S.C. § 2254(d), states in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States....

Under Section (d)(1), a federal habeas court may, when presented with a decision on the merits of a claim by the state court, grant relief under one of two distinct approaches. Under the "unreasonable application" clause, habeas relief may be granted if the state court identifies the correct governing legal principle from the decisions of the Supreme Court but then unreasonably applies that principle to the facts of the petitioner's case.[57]

The proper inquiry for the habeas court in such cases is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect.[58] The federal habeas court must look to holdings of the Supreme Court, not dicta, at the time of the relevant state decision.[59] However, the absence of an explicit rule in prior holdings does not, by itself, determine controlling federal law since that law also includes the "legal principles

---

[57] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[58] *Id.* at 409-11.

[59] *Id.* at 412.

and standards flowing from precedent."[60]  Moreover, while courts may not look to lower federal court decisions as formulating clearly established federal law,[61] the habeas court may look to federal appeals court decisions to inform its analysis of Supreme Court holdings.[62]

Under the "contrary to" clause, habeas relief may be granted if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts.[63]  The words "contrary to" should be understood to mean "diametrically different, opposite in character or nature, or mutually opposed."[64]

**2.** ***The state court decision adjudicating Garrett's claim in Ground One was not an unreasonable application of, nor contrary to, clearly established federal law.***

In addressing Garrett's claim that he was improperly required to appear before the jury in prison attire, shackles and handcuffs, the state appeals court, beginning with a quotation from a previous decision of that court, stated:

> "A criminal defendant is generally entitled to appear in court without shackles, as the presumption of innocence may be undermined when the defendant is presented in restraints.  While shackling is an extreme measure, in some circumstances it is necessary for the safe, reasonable and orderly progress of the trial.  The decision as to whether to shackle a defendant lies in the sound discretion of the court, and the record should reflect the factors upon which the court exercised its discretion."

---

[60] *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005), quoting *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002).

[61] *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001).

[62] *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

[63] *Williams*, 529 U.S. at 405-06.

[64] *Id.* at 405; *Doan*, 237 F.3d at 731.

Ordinarily, and for obvious reasons, a criminal defendant carrying a presumption of innocence is entitled to appear in court without shackles. However, a defendant's own conduct sometimes amounts to a waiver of the right to be free from any restraint during the course of a trial.  As stated in *State v. Carter*,[65] "a defendant in a criminal case has the right to appear at trial without shackles or other physical restraint except when the court, in the exercise of sound discretion, determines that such restraint is necessary to the safe and orderly progress of the trial."

Additionally, the United States Supreme Court has held:

"We are cognizant of the potential for prejudice when a defendant appears before a jury in jail clothes. 'The constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment.'"

However, in the case sub judice, we find that the Appellant was not prejudiced by having to wear his prison attire since the jury was already aware that Appellant was a prisoner in that the crime with which he was charged was for conveying drugs into a prison.  Therefore, any error would be harmless.

Furthermore, Appellant was currently incarcerated for aggravated murder, and the trial court was within its sound discretion to choose to protect the jury and others in the courtroom by restraining Appellant since as his own counsel he was free to move about the courtroom and approach witnesses and the jury.[66]

Citing Supreme Court holdings in *Estelle v. Williams*[67] and *Holbrook v. Flynn*,[68] Garrett here claims that the decision of the state appeals court was an unreasonable application of clearly established federal law.  The trial court made no finding as to what

---

[65] *State v. Carter*, 53 Ohio App. 2d 125, 372 N.E.2d 622 (Ohio App. 4th Dist., 1977).

[66] *Garrett*, 2004 WL 943862, at **3-4 (internal citations omitted).

[67] *Estelle v. Williams*, 425 U.S. 501 (1976).

[68] *Holbrook v. Flynn*, 475 U.S. 560 (1986).

-13-

essential state interest justified the use of shackles and restraints[69] but impermissibly deferred to the opinions of corrections officers, without subjecting those opinions to a hearing, as to what level of security was required for Garrett.[70]

The United States Supreme Court has recently reiterated the rule that the Constitution forbids the use of physical restraints on a defendant during trial "*unless* that use is justified by an essential state interest – as the interest in courtroom security – specific to the defendant."[71]  This rule is of long-standing and is well-recognized.[72]

However, as the Sixth Circuit recently found in *Ruimveld v. Birkett*[73] "it cannot be said that the Supreme Court has held squarely that shackling is a practice so prejudicial as to preclude all harmless error review."[74]  Rather, the Sixth Circuit concluded, "despite the apparently contradictory statements in dicta in both *Holbrook*[75] and *Allen*[76] that shackles are inherently prejudicial, this Court cannot fairly say that [a state] appellate court's decision to

---

[69] ECF # 14 at 9-10.

[70] *Id*. at 7.

[71] *Deck v. Missouri*, 544 U.S. 622, 624 (2005) (emphasis in original).

[72] *Lakin v. Stine*, 431 F.3d 959, 963 (6th Cir. 2005) ("[T]he principle that shackling a defendant at trial without the individual determination as to necessity violates the due process clause was clearly established before *Deck* was decided.").

[73] *Ruimveld*, 404 F.3d 1006.

[74] *Id.* at 1013.

[75] *Holbrook*, 475 U.S. 560.

[76] *Illinois v. Allen*, 397 U.S. 337 (1970).

-14-

employ harmless error analysis in [a shackling] case constitute[s] a decision that was either contrary to clearly established Federal law or an unreasonable application thereof."[77]

Here, Garrett, like the petitioner in *Ruimveld*, misapprehends the dicta in *Holbrook* and *Estelle* as mandating a conclusion that shackling is inherently prejudicial without recourse to harmless error analysis.  Correctly understood, "the holdings of *Estelle* and *Holbrook*, especially, effectively state that indicia of guilt, such as shackles, impose a significant level of harm upon the presumption of innocence, and that the injurious influence of such harm can only be overcome by a confident finding that the indicia were warranted *or* that the outcome of the defendant's case was not affected."[78]

The state appeals court in this case employed both aspects of the *Ruimveld* analysis in concluding that Garrett's claim had no merit.  It initially assumed, *sub silencio*, that the decision to shackle Garrett without a hearing was error, but then found that any error in having Garrett appear in prison garb and shackles was harmless because the jury was already aware of his status as a prisoner since he was charged with conveying drugs into a prison.[79] It then alternatively concluded, again without explicitly saying so, that no error occurred because the trial judge was within his discretion to order Garrett shackled since he was acting

---

[77] *Id.*, citing *Bell v. Hurley*, 97 F. App'x 11, 16-17 (6th Cir. 2004) (unpublished opinion) (harmless error analysis utilized to conclude that no hearing on decision by the trial court to shackle defendant was necessary given defendant's obvious danger, and that even if shackling was error, no prejudice resulted to defendant given the overwhelming evidence of guilt).

[78] *Ruimveld*, 404 F.3d at 1014 (emphasis added).

[79] *Garrett*, 2004 WL 943862, at * 4.

as his own counsel and was free to move about the courtroom, thereby posing a security risk.[80]

In reviewing these two justifications, it is initially clear that Garrett's status as his own counsel at trial, with the ability to move about the courtroom and approach jurors and witnesses, and the recommendation of the corrections officers for shackling, did not, of themselves, satisfy the rule that shackling is not justified without a hearing establishing specific facts as to a particular security risk that could be reduced only by shackling.[81] Inasmuch as the trial court conducted no hearing as to specific risk factors or less prejudicial means of restraint, the decision to shackle Garrett at trial very likely was error.

Nonetheless, despite any error in the decision to have Garrett appear in shackles at trial, the writ still may not issue if that error was harmless. In that regard, the mere fact, cited by the state appeals court, that Garrett was known by the jury to be a prisoner does not serve, of itself, to mitigate the prejudice inherent in his appearing shackled before the jury.[82]

However, despite this defective reasoning, the decision by the state appeals court to employ a harmless error analysis here is correct and, for different reasons, its finding that any

---

[80] *Id.*

[81] *See*, *Lakin*, 431 F.3d at 964 (Shackling should only be allowed after the trial court considers factors such as (1) the defendant's record, temperament and the desperateness of his situation; (2) the state of the courtroom and the courthouse; (3) the defendant's physical condition; and (4) whether there is a less prejudicial but adequate means of providing security.).

[82] Indeed, *Ruimveld* notes that when a known prisoner still has to appear in shackles while in a guarded courthouse, it may actually create further prejudice since the jury may then conclude that the prisoner must be especially dangerous or violent. *Ruimveld*, 404 F.3d at 1016.

error in this case was harmless is not an unreasonable application of, nor contrary to, clearly established federal law.

As recently stated by the Southern District of Ohio in *Evans v. Voorhies*:[83]

> The constitutional error committed by the trial court, of ordering the shackling and handcuffing of the petitioner at trial without an individualized determination as to the necessity for those restraints, is subject to review for harmless error. The case-law is unclear, however, regarding the proper standard to apply in assessing whether or not harmless error occurred.[84]

In that regard, the Supreme Court has recently held that in habeas proceedings under § 2254 a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*,[85] "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*."[86]

Notwithstanding this mandate in *Fry* to employ the *Brecht* analysis in "virtually all § 2254 cases," the Supreme Court in *Fry* also took note that *Brecht* itself suggests an exception to this general rule for the "unusual case" of a "deliberate and especially egregious

---

[83] *Evans v. Voorhies*, No. 1:06-CV-746, 2007 WL 2891003 (S.D. Ohio, September 28, 2007).

[84] *Id.* at *24 (citations omitted).

[85] *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

[86] *Fry v. Pillar*, __ U.S. __, 127 S. Ct. 2321, 2328 (2007), citing *Chapman v. California*, 386 U.S. 18 (1967).

error of the trial type ... [which] infect[s] the integrity of the proceeding," and that must be analyzed for harmless error under *Chapman*.[87]

Since, as the Southern District of Ohio noted in *Evans*, there is no clear guidance as to whether a harmless error inquiry into a shackling violation at trial is to be conducted under the less demanding "substantial and injurious effect" standard of *Brecht* applicable to "virtually all" habeas cases, or pursuant to the more demanding requirements of *Chapman*, reserved for the "unusual case," whereby the state must show "beyond a reasonable doubt" that the error was harmless, I recommend that the analysis here should proceed, out of an abundance of caution, under the *Chapman* standard.[88]

Initially, as previously noted, it is clear that the state appellate court's harmless error analysis was cursory and unpersuasive. The fact that Garrett was known to be a prisoner does not render harmless the prejudice flowing from having him stand trial in shackles and prison garb.

However, a review of the total record shows that the evidence against Garrett was overwhelming. The jury heard state prison authorities state that Garrett's phone and mail

---

[87] *Id*. (quoting *Brecht*, 507 U.S. at 638 n.9).

[88] *Evans*, 2007 WL 2891003, at *25. The Sixth Circuit appears to have employed the *Brecht* harmless error test in *Ruimveld*. *See*, *Ruimveld*, 404 F.3d at 1018. But that case was decided before *Fry* and the supporting discussion in *Ruimveld* about the need for something more to overcome prejudice in a "close case based on purely circumstantial evidence," *id.* at 1017-18, suggests that the Sixth Circuit might be inclined to find the stricter *Chapman* standard appropriate in cases of shackling. *See also*, *Eddleman v. McKee*, 471 F.3d 576, 583 (6th Cir. 2006) (holding prior to *Fry* that the "AEDPA replaced the *Brecht* standard with the standard of *Chapman* plus AEDPA deference when, as here, a state court made a harmless-error determination.").

communications were monitored; that monitoring disclosed that Garrett had put out a request to have marijuana brought into the prison for him; Sarah Russell testified that she brought the marijuana into the prison at Garrett's direct request; upon showing up at prison to visit Garrett, Sarah Russell was searched – and the marijuana found hidden in her body – under a search warrant obtained as a result of the phone and mail monitoring of Garrett; and a state crime lab report – the authenticity of which was stipulated to by Garrett's court-appointed attorney prior to Garrett assuming his own representation – verified that the substance concealed in Sarah Russell's body when she came to the prison to visit Garrett was marijuana.[89]

Accordingly, although shackling Garrett at trial without a hearing was error, and although the state appeals court's reasoning that any such error was harmless because the jury already knew Garrett was a prisoner is not persuasive, the state appellate court was correct to employ a harmless error analysis here and, under the *Chapman* standard, the record shows that the error was harmless beyond a reasonable doubt.[90]  Therefore, I recommend finding that the state court decision denying Garrett's claim in this regard was not an unreasonable application of, nor contrary to, clearly established federal law.  As such, I further recommend that Garrett's first ground for relief be denied.

-------------------

[89] *Garrett,* 2004 WL 943862, at **2, 4.  The overwhelming evidence against Garrett presented at trial differentiates this case from *Ruimveld*, where the Sixth Circuit characterized the case against that petitioner as "not an open-and-shut case" and the evidence as "merely circumstantial."  *Ruimveld*, 404 F.3d at 1016.

[90] Obviously, the error would also be harmless under *Brecht*'s less-stringent standard of "substantial and injurious effect."

**B.      Garrett has procedurally defaulted his second claim for habeas relief.**

*1.      Standard of review*

The Sixth Circuit has formulated the standard of review applicable to claims of procedural default as follows:

> A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his claim by a federal court. The petitioner must first exhaust the remedies available to him in state courts by fairly presenting his federal claim to the state court; unexhausted claims will not be reviewed by the federal court.  The exhaustion "requirement is satisfied when the highest court in the state in which the prisoner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state court while state remedies were available *or* when the petitioner's failure to comply with a state procedural rule prevented the state court from reaching the merits of the claims.
>
> For noncompliance with a state procedure to serve as a bar to habeas review, a state procedure must satisfy the standards set forth in *Maupin v. Smith.*  First, there must be a state procedure in place that the petitioner failed to follow.  Second, the state court must have actually denied consideration of the petitioner's claim on the grounds of the state procedural default.  Third, the state procedural rule must be an "adequate and independent state ground" to preclude habeas review.  This inquiry "generally will involve an examination of legitimate state interests behind the procedural rule in light of the legitimate federal interest in considering federal claims."  A state procedural rule must be "firmly established and regularly followed" to constitute an adequate basis for foreclosing habeas review.  A state procedural rule is an independent ground when it does not rely on federal law.  If these three factors are satisfied, the petitioner can overcome the procedural default by either "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice.[91]

---

[91] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 430-31 (6th Cir. 2006) (internal citations omitted, emphasis in original).

To establish "cause" for a procedural default, a habeas petitioner must show that "something external to the petitioner, something that cannot fairly be attributable to him[,]" precluded him from complying with the state procedural rule.[92] Establishing "prejudice" requires that any alleged constitutional error be shown to have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[93] A "fundamental miscarriage of justice" is understood to require proof of "actual innocence."[94]

## 2. *Garrett procedurally defaulted his second claim by not raising ineffective assistance of appellate counsel to the Ohio Supreme Court during his direct appeal.*

Garrett essentially concedes the State's argument that he has defaulted this claim by not appealing the decision of the state appeals court denying that claim to the Ohio Supreme Court within 45 days, but asserts that he has cause for that default and will suffer prejudice from not having his claim adjudicated here.[95] Garrett's contention is that his failure to appeal to the Ohio Supreme Court was because he did not receive notice of the state appeals court decision of August 12, 2004 until May 13, 2005, after he made an inquiry in early May into the status of his application.[96]

---

[92] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

[93] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[94] *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003).

[95] ECF # 14 at 20.

[96] *Id.* at 21.

For the reasons that follow, while I find that a procedural default has occurred, I do not believe that the State's formulation of that default, or Garrett's, correctly states what is the operative default here.

Initially, it must be noted that Garrett never did attempt to appeal from the adverse decision of the state appeals court concerning his Rule 26(B) application. While Garrett did try to get the appeals court to re-issue its decision at a later date so as to create a new time clock for an appeal to the Supreme Court, and appealed from the denial of that motion, he never tried to file a delayed appeal of the denial of his Rule 26(B) application with the Ohio Supreme Court.

As a result, Garrett's claim appears to be unexhausted since the merits of that claim have never been presented to the Ohio Supreme Court, thus giving the State one full round of the established review procedures to consider that claim.[97]

However, notwithstanding any failure to appeal the denial of the Rule 26(B) application to the Ohio Supreme Court, whether as a timely appeal or as a delayed appeal, it appears that Garrett's claim here is procedurally defaulted because it was not first raised during the direct appeal to the Ohio Supreme Court. Ohio has the "long-standing rule" that *res judicata* will bar consideration of constitutional claims in post-conviction proceedings that could have been raised on direct appeal.[98] That long-standing rule has been consistently applied by Ohio courts to claims of ineffective assistance of appellate counsel where (1) the

---

[97] *O'Sullivan v. Boerkel*, 526 U.S. 838, 842 (1999).

[98] *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001), citing *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104, 105-06 (1967).

claim does not rely on evidence outside of the trial record,[99] and (2) the appellant is no longer represented by the same attorney being accused of ineffectiveness.[100]

Here, Garrett was representing himself during the direct appeal to the Ohio Supreme Court. He was no longer represented by the appellate attorney who he alleges was ineffective for not raising the issue that the trial court did not hold a *Faretta* hearing on Garrett's desire to represent himself. Just as important, Garrett's direct appeal was still pending with the Ohio Supreme Court when he chose to file his Rule 26(B) application in the appeals court, alleging for the first time that his appellate counsel was ineffective.

As such, there can be no doubt that Garrett knew the facts underlying his ineffective assistance of appellate counsel argument in time to have asserted them first to the Ohio Supreme Court, but chose not to do so. Moreover, during his direct appeal to the Ohio Supreme Court, Garrett was no longer represented by his ineffective appellate counsel.

Thus, Garrett's failure to raise his ineffective assistance argument first to the Ohio Supreme Court during the direct appeal, while technically creating an unexhausted claim, actually renders that argument procedurally defaulted, since the Ohio Supreme Court would bar consideration of Garrett's claim in any appeal from the Rule 26(B) decision, regardless

---

[99] *See*, *Hartman v. Bagley*, 492 F.3d 347, 357-58 (6th Cir. 2007).

[100] *Combs v. Coyle*, 205 F.3d 269, 276-77 (6th Cir. 2000).

of the reasoning of the state appeals court in denying that application, pursuant to its long-standing rule of *res judicata*.[101]

This Court has recently ruled, in a comprehensive opinion by District Judge Kathleen O'Malley in *Thompson v. Bradshaw*,[102] that failure to raise ineffective assistance of appellate counsel to the Supreme Court on direct appeal under these circumstances works a procedural default.[103]

Accordingly, properly understood, the procedural default here occurred in Garrett's failure to raise this argument on direct appeal, not in any failure to make a timely appeal from the denial of his Rule 26(B) application.[104]  Garrett's argument for "cause" to excuse a procedural default arising out of a failure to appeal the denial of the Rule 26(B) application – specifically the failure of the appeals court to provide him with notice of its decision on the Rule 26(B) application – is, therefore, not relevant.

---

[101] *See*, *Coleman*, 501 U.S. at 735 n.1 (citations omitted).  "[I]f the petitioner fails to exhaust state remedies and the court to which the petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred[, then] there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims."

[102] *Thompson v. Bradshaw*, No. 1:04-cv-2204, 2007 WL 2080454 (N.D. Ohio July 16, 2007).

[103] *Id.* at **7-10.

[104] Although the State did not correctly posit the grounds for the procedural default, it did raise the issue of procedural default, ECF # 9 at 13, and Garrett responded.  ECF # 14 at 20.  To the extent that analyzing this default under the correct facts, not previously argued by the parties, transforms this into a *sua sponte* dismissal, such an action, while not favored, is permitted in cases such as this where procedural default was raised and argued, even though not on the same theories.  *See*, *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002).

I recommend finding: (1) that Garrett has procedurally defaulted on his claim in ground two; (2) that this claim, despite also being unexhausted, could not now be entertained by the Ohio Supreme Court; and (3) that the default here cannot be excused for cause. Accordingly, I recommend that ground two be dismissed.

## IV.  Conclusion

For the foregoing reasons, I recommend that Garrett's petition be dismissed as to Ground Two and denied as to Ground One.

Dated:  October 30, 2007                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

### Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[105]a

---

[105] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).